UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARK DAMON MYERS,

            Petitioner,

      v.

K. HARRINGTON, Warden,

            Respondent.

)
)
)
)
)
)
)
)
)
)
)

Case No. CV 10-4838-SJO (OP)

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE
JUDGE

     This Report and Recommendation is submitted to the Honorable S. James Otero, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## I.

## **PROCEEDINGS**

     On June 30, 2010, Mark Damon Myers ("Petitioner"), filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"). On August 19, 2010, Respondent filed an Answer to the Petition. On October 28, 2010, Petitioner filed a Reply to the Answer. Thus, this matter is ready for decision.

/ / /

1

# II.

## PROCEDURAL HISTORY

On February 3, 2006, Petitioner was convicted after a jury trial in the Los Angeles County Superior Court of murder, three counts of home invasion robbery, attempting to dissuade a witness, and conspiracy to dissuade a witness. (Clerk's Transcript ("CT") at 426-35.) The jury further found that the murder was committed during a robbery, that a principal personally discharged a firearm causing the victim's death, and that the crimes were committed for the benefit of a criminal street gang. (Id.) On February 20, 2008, Petitioner was sentenced to a state prison term of life without the possibility of parole, plus seventy-five years to life and a determinate term of six years. (Id. at 474-82.)

Petitioner appealed the conviction to the California Court of Appeal. (Lodgment 3.) On December 17, 2008, the court of appeal affirmed the judgment. (Lodgment 5.)

Petitioner filed a petition for review in the California Supreme Court. (Lodgment 6.) On March 25, 2009, the supreme court denied the petition. (Lodgment 7.)

# III.

## SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL

Since Petitioner is challenging the sufficiency of the evidence to support his conviction on the firearm and gang enhancements, the Court has independently reviewed the state court record. See Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997). Based on this review, the Court adopts the factual discussion of the California Court of Appeal opinion, as a fair and accurate summary of the evidence presented at trial:[1]

---

[1] "Factual determinations by state courts are presumed correct absent clear

(continued...)

Defendant, a member of the Eastside Longo criminal street gang, was a longtime acquaintance of murder victim Rudolpho Rodriguez and Rodriguez's girlfriend, Christina James, both of whom were methamphetamine users. Gregory Clark and Jo'el Bruce, with whom defendant was also acquainted, lived next door to defendant's grandmother in the City of Signal Hill. At one point defendant asked Clark if defendant could go into the methamphetamine dealing business with Clark. Clark declined.

On April 15, 2004, Rodriguez and James went to visit Clark and Bruce at their home. As Rodriguez and James approached the Clark-Bruce house, they saw defendant standing on the porch of his grandmother's house. Defendant told Rodriguez that he wanted to talk to him. Rodriguez agreed and the two talked for five to 10 minutes while James visited with Clark and Bruce. Rodriguez then joined James, Clark and Bruce inside the Clark-Bruce residence.

About five minutes later, defendant knocked on the door of the Clark-Bruce residence and was let in by Clark. Defendant was accompanied by two men, one of whom displayed a gun. Defendant told those in the room that they were being "taxed" and ordered them to hand over their valuables. Clark handed over his rings and about $200 in cash. Three cell phones were taken from James's purse. Rodriguez asked defendant's two accomplices for their names. Defendant

---

(...continued)

and convincing evidence to the contrary." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)). Recent Ninth Circuit cases have accorded the factual summary set forth in an opinion of the California Court of Appeal a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). <u>See, e.g.</u>, <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2009) (citations omitted); <u>Slovik v. Yates</u>, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

responded that Rodriguez should not be concerned and that Rodriguez should remember that defendant was from Eastside Longo.

According to James, after the cell phones had been taken from her purse the accomplice who had the gun told James to take off her jewelry. Rodriguez then stood up, "said that they would have to shoot him now," and hit defendant in the head. Defendant said, "'Shoot him, just shoot him,'" and the accomplice with the gun shot Rodriguez.

According to Clark, the accomplice with the gun pointed it at Rodriguez and told Rodriguez to empty his pockets. After doing so, Rodriguez said to defendant, "'now you're going to have to shoot me.' And advanced on [defendant]." Rodriguez "threw the first punch" and the two struggled "somewhat." Clark next saw a flash, heard a gunshot, and saw Rodriguez fall to the floor. Clark did not recall anyone saying, "Shoot him."

Following the shooting, defendant and his accomplices fled. Rodriguez was taken to the hospital, where he died of a single gunshot wound to the torso. The fatal bullet was recovered from Rodriguez's body. A spent bullet casing was found at the scene.

The next day, a Long Beach police officer attempted to effect a traffic stop of a car being driven by an Eastside Longo gang member. The car sped off and a chase ensued, which ended when the driver crashed his car into another vehicle. A search of the route taken during the chase revealed a handgun with scratches consistent with having been thrown onto the street from a moving car. Ballistics testing determined that the bullet with which Rodriguez was shot had been fired from that handgun.

James and Clark initially denied knowing who any of their assailants were but later identified defendant. At various points before

4

trial, defendant contacted James and told her to say that he was not at the scene. Others threatened James with harm if she identified defendant. Following defendant's arrest, defendant told an associate that there would be no case against him if James, Clark, and Bruce did not show up in court.

Gang expert Officer Abel Morales testified that Eastside Longo is an established Hispanic gang whose primary activities include murder, robbery, and drug sales. "[W]hen a gang member comes to you and say[s], 'You're being taxed,' you're paying extortion money so that they can let you continue doing what you got to do, whether it may be selling drugs or whatever it is that you do." Eastside Longo benefits from controlling drug trade in Signal Hill and areas of Long Beach. One self-identified Eastside Longo gang member had previously been convicted of attempted murder and another had been convicted of assault with a firearm.

In defense, defendant's grandmother testified that defendant has an identical twin brother.

(Lodgment 5 at 2-4.)

## IV.
## PETITIONER'S CLAIMS

Petitioner raises the following claims for habeas corpus relief:

(1)     The trial court failed to instruct the jury on intent to kill as to the special circumstances allegation and the failure was prejudicial (Pet. at 5, Ex. B at 10-13);

(2)     There was insufficient evidence to support the firearm and gang enhancement findings, as the evidence was based on inadmissible hearsay testimony of Officer Moreno regarding statements made to him by Moreno and Castaneda that they were gang members (id. at 6,

5

Ex. B at 13-16); and

(3)     If the Court finds Petitioner waived his objection to Officer Moreno's testimony as hearsay because counsel failed to raise a hearsay objection at trial, then Petitioner was denied the effective assistance of counsel (id. at 6, Ex. B at 16).

## V.

## STANDARD OF REVIEW

The standard of review applicable to Petitioner's claims is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, a state court factual determination shall be presumed correct unless rebutted by clear and convincing evidence. Id. § 2254(e)(1).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court

decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court.  <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.6 (9th Cir. 2000).  Ninth Circuit cases "may be persuasive."  <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999).  On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court.  <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).

Although a particular state court decision may be both "contrary to" and an "unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings.  <u>Williams</u>, 529 U.S. at 405.  A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing <u>Williams</u>, 529 U.S. at 405-06).  When a state court decision adjudicating a claim is "contrary to" controlling Supreme Court precedent, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)."  <u>Williams</u>, 529 U.S. at 406.  However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Packer</u>, 537 U.S. at 8.

State court decisions that are not "contrary to" Supreme Court law may only

7

be set aside on federal habeas review "if they are not merely erroneous, but 'an <u>unreasonable</u> application' of clearly established federal law, or based on 'an <u>unreasonable</u> determination of the facts.'" <u>Id.</u> at 11 (citing 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. <u>See Williams</u>, 529 U.S. at 406-10, 413 (e.g., the rejected decision may state <u>Strickland</u> rule correctly but apply it unreasonably); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." <u>Visciotti</u>, 537 U.S. at 27. An "unreasonable application" is different from an erroneous or incorrect one. <u>Williams</u>, 529 U.S. at 409-10; <u>see also</u> <u>Visciotti</u>, 537 U.S. at 25.

Where, as here, the California Supreme Court denies a petitioner's claims without comment, the state high court's "silent" denial is considered to be "on the merits" and to rest on the last reasoned decision on these claims, in this case, the grounds articulated by the California Court of Appeal in its decision. <u>See Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); <u>Hunter v. Aispuro</u>, 982 F.2d 344, 347-48 (9th Cir. 1992); <u>see also</u> <u>Kennedy v. Lockyer</u>, 379 F.3d 1041, 1052 (9th Cir. 2004); <u>Gill v. Ayers</u>, 342 F.3d 911, 917 n.5 (9th Cir. 2003).

**VI.**

**DISCUSSION**

**A.**    **<u>Habeas Relief Is Not Warranted on Petitioner's Claim of Instructional Error</u>.**

     **1.**    **<u>Background</u>.**

Petitioner contends the trial court failed to instruct the jury that intent to kill was an element of the robbery-murder special allegation. (Pet. at 5, Ex. B at 10-

8

11.)  He contends that the error was prejudicial because there was conflicting testimony as to whether he told his accomplice to shoot the victim.  (Id. at 5, Ex. B at 12-13.)

## 2. California Court Opinions.

The California Court of Appeal found that the trial court erred when it failed to provide the jury with the instruction but found that under the test set forth in Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 1283, 17 L. Ed. 2d 705 (1967), the error was harmless:

> The Attorney General concedes a properly instructed jury would not necessarily have found that defendant acted with the specific intent to kill.  Rather, the Attorney General focuses on the provision of section 190.2, subdivision (d) and CALJIC No. 8.80.1 that requires a special circumstance finding upon the determination that a defendant with reckless indifference to human life and as a major participant aided and abetted a felony such as robbery.
>
> "[T]he culpable mental state of 'reckless indifference to life' is one in which the defendant 'knowingly engag[es] in criminal activities known to carry a grave risk of death' [citation]. . . ." "'[R]eckless indifference to human life' is commonly understood to mean that the defendant was subjectively aware that his or her participation in the felony involved a grave risk of death.  The common meaning of the term 'indifference,' referring to 'the state of being indifferent,' is that which is 'regarded as being of no significant importance or value.' [Citation.] To regard something, even to regard it as worthless, is to be aware of it. [Citation.]    [¶] Although the term 'reckless'-standing alone-may arguably be understood in common parlance to mean simply neglectful, heedless, or rash [citation], when the word is placed in context within the statutory phrase 'indifference to human life,' what is conveyed to the

9

jury is more than mere negligence."

Regardless of the potential conflict in evidence regarding whether defendant told his accomplice to shoot Rodriguez, the evidence with respect to defendant's culpability as a major participant in a robbery acting with reckless indifference to human life is clear. The record establishes Clark had refused to take defendant into Clark's methamphetamine-dealing enterprise. On the day of the murder, defendant saw that his methamphetamine-using friend, Rodriguez, was about to visit Clark in the house next door and asked to talk to Rodriguez for a few minutes. After doing so, Rodriguez went into Clark's residence. A few minutes later, defendant knocked on the door. When defendant was let in, he was in the company of two other men, one of whom was displaying a gun. The purpose of the three perpetrators was immediately apparent, as Clark and his guests were told by defendant that they would have to pay extortion money to continue their drug-dealing enterprise and that the money would be taken from the contents of their pockets, purses, and from their bodies in the form of jewelry.

The scenario of "taxing" a drug dealer and his friends by robbing them in the dealer's home at the point of a gun carries a grave risk that the gun may be used and someone may die. As the mastermind of the robbery, defendant was certainly a major participant in the robbery who acted with reckless indifference to human life. Accordingly, we conclude that a properly instructed jury would have found true the robbery special circumstance alleged against defendant. The failure to instruct under CALJIC No. 8.80.1 or its equivalent was therefore harmless beyond a reasonable doubt.FN1

FN1. We further note that the prosecutor's summation to the jury,

10

which may be properly considered in assessing prejudice, accurately set forth the relevant legal requirements. In his summation, which was delivered before any of the instructions were read, the prosecutor explained that in order to find the special circumstance true the jury would have to find either that defendant told his accomplice to shoot Rodriguez or that defendant was a major participant in the robbery and acted with reckless indifference to human life. Conversely, the prosecutor continued, if the jury concluded that neither was true, the special circumstance should be found not true. Accordingly, the jury entered its deliberations with an accurate explanation of the requirements of the special circumstance finding the prosecutor was asking to be made.

(Lodgment 5 at 5-7 (citations omitted).)

### 3. <u>Legal Standard.</u>

As a general rule, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." <u>Middleton v. McNeil</u>, 541 U.S. 433, 437, 124 S. Ct. 1830, 1832, 158 L. Ed. 2d 701 (2004). In order to obtain federal habeas relief based on a trial court's failure to give an instruction, a petitioner must show that the failure to give the instruction was error, and that the error so infected the entire trial that he was deprived of his constitutional right to a fair trial. <u>Waddington v. Sarausad</u>, 555 U.S. 179, 129 S. Ct. 823, 832, 172 L. Ed. 2d 532 (2009) (citations omitted); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973)); <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). Because an omitted instruction is less likely to be prejudicial than a misstatement of the law, a petitioner seeking habeas relief based on a failure to give a particular instruction bears an "especially heavy" burden. <u>Henderson</u>, 431

1  U.S. at 155.

2     Moreover, the alleged error must be considered in the context of the

3  instructions as a whole and the entire trial record (including the arguments of

4  counsel). McGuire, 502 U.S. at 72; United States v. Frady, 456 U.S. 152, 169, 102

5  S. Ct. 1584, 71 L. Ed. 2d 816 (1982); Cupp, 414 U.S. at 147. Thus, even if the

6  court's failure to provide the instruction was error, Petitioner still would not be

7  entitled to habeas relief unless the error had a "substantial and injurious effect or

8  influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619,

9  637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (to obtain habeas relief, the

10 trial error must have had a "substantial and injurious effect or influence in

11 determining the jury's verdict."); see also Bradley v. Duncan , 315 F.3d 1091,

12 1098-99 (9th Cir. 2002).

13     **4.     Analysis.**

14     Even if the Court assumes the failure to instruct with CALJIC No. 8.80.1

15 was error, the Court agrees with the California Court of Appeal's assessment of

16 the error as harmless. Brecht, 507 U.S. at 637-38.

17     The instruction would have informed the jury that if it found that Petitioner

18 was not the actual killer, it could not find the special circumstance to be true

19 unless it was satisfied beyond a reasonable doubt that Petitioner "with the intent to

20 kill aided, abetted, . . . or assisted any actor in the commission of the murder in the

21 first degree, *or with reckless indifference to human life and as a major participant*,

22 aided, abetted, . . . or assisted in the commission of the crime of [robbery] which

23 resulted in the death of a human being." (Lodgment 5 at 4-5 (emphasis added).)

24     The evidence clearly established that Petitioner was a major participant in

25 the robbery. He planned the robbery, knew the victims, had unsuccessfully asked

26 Clark to become a partner in the drug trade, and led his two accomplices into

27 Clark's home. During the robberies and murder, Petitioner told the victims they

28 were being "taxed" and to empty their pockets. Moreover, Petitioner may have

told his accomplice to shoot Rodriguez. Thus, there is no doubt that Petitioner qualified as a "major participant" in the robbery.

"Reckless indifference to human life" refers to a mental state in which "the defendant 'knowingly engag[es] in criminal activities known to carry a grave risk of death.'" People v. Estrada, 11 Cal. 4th 568, 577 (1995) (quoting Tison v. Arizona, 481 U.S. 137, 157, 107 S. Ct. 1676, 95 L. Ed. 2d 127 (1987)). It is a "subjective awareness of the grave risk to human life created by his or her participation in the underlying felony." People v. Proby, 60 Cal. App. 4th 922, 928 (1998) (citation omitted) (internal quotation marks omitted).

Substantial evidence supports the jury's finding that Petitioner acted with reckless indifference to human life while engaged in the robbery. He entered the home of a known drug dealer with two young gang members, one of whom was carrying a gun. At gunpoint, Petitioner and his accomplices demanded property of the victims. One of the victims, Rodriguez, also struck Petitioner prior to being shot. Based on these circumstances, Petitioner's actions clearly demonstrated a reckless disregard for human life.

Based on the foregoing, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

**B.** **Habeas Relief Is Not Warranted on Petitioner's Claim That Insufficient Evidence Supported His Conviction.**

    **1.** **Background.**

Petitioner contends there was insufficient evidence to support his conviction to support the firearm and gang enhancement findings. (Pet. at 6.) Specifically, he claims there was insufficient evidence to show the shooter was acting for the benefit of a gang as defined by California Penal Code section 186.22(b), and to show a "pattern of criminal activity" as defined by California Penal Code section

13

186.22(e).  (Id. at 6, Ex. B at 13-16.)  He bases this claim on his contention that the prosecution relied on inadmissible hearsay testimony of Officer Morales to the effect that Moreno and Castaneda, two individuals who were used to establish some of the requisite elements of the gang enhancement, had told Officer Morales that they were gang members.  (Id. at 6, Ex. B at 13-16.)  He claims Moreno and Castaneda were not unavailable, their statements were not against penal interest because gang membership by itself is not a crime, and their hearsay statements were testimonial within the meaning of Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).  (Id. at 6, Ex. B at 13-16.)  Moreover, he claims there was no showing Moreno and Castaneda were the actual persons who committed the crimes alleged in the prosecution's Exhibits 72 and 73, documenting the crimes committed by Moreno and Castaneda.  (Id. at 6, Ex. B at 13-16.)

In the alternative, he argues that if the issue has been forfeited for failure to object, then his trial counsel rendered ineffective assistance.  (Id. at 6, Ex. B at 16.)

## 2. **California Court Opinions.**

The California Court of Appeal rejected this claim:

> In People v. Ramirez, the defendant argued that hearsay testimony of a gang expert (coincidentally, Officer Morales) regarding predicate offenses to establish a pattern of criminal gang activity violated Crawford. The argument was rejected, the court concluding that "[h]earsay in support of expert opinion is simply not the sort of testimonial hearsay the use of which Crawford condemned. [Citation.]" Accordingly, there was no valid basis on which to object to the testimony about which defendant now complaints [sic], and his contentions of evidentiary error and ineffective counsel must be rejected.

(Lodgment 5 at 8 (citation omitted).)

3. **Legal Standard.**

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The Supreme Court announced the federal standard for determining the sufficiency of the evidence to support a conviction in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under Jackson, "[a] petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). The Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Wright v. West, 505 U.S. 277, 284, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992). "Put another way, the dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 318).

When the factual record supports conflicting inferences, the federal court must presume, even if it does not affirmatively appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and the court must defer to that resolution. Jackson, 443 U.S. at 326. "Jackson cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution.'" Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 319). Additionally, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." Walters v. Maass, 45 F.3d 1355, 1358 (9th

15

Cir. 1995) (citation omitted).  The federal court must refer to the substantive elements of the criminal offense as defined by state law and look to state law to determine what evidence is necessary to convict on the crime charged.  Jackson, 443 U.S. at 324 n.16; Juan H., 408 F.3d at 1275.

The Jackson standard applies to federal habeas claims attacking the sufficiency of the evidence to support a state conviction.  Juan H., 408 F.3d at 1274; Chein, 373 F.3d at 983; see also Bruce, 376 F.3d at 957.  The AEDPA, however, requires the federal court to "apply the standards of Jackson with an additional layer of deference."  Juan H., 408 F.3d at 1274.  The federal court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application' of Jackson and Winship to the facts of this case."  Id. at 1275 & n.13.

    **4.**    **Analysis.**

    **a.**    **Admission of Hearsay Statements.**

California Penal Code section 12022.53, enhancing the sentence for persons convicted of certain enumerated felonies who use firearms in the commission of the crime, states in part:

> The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved:
>
> (A)    The person violated subdivision (b) of Section 186.22.
>
> (B)    Any principal in the offense committed any act specified in subdivision (b), (c), or (d).

Cal. Penal Code § 12022.53(e)(1).  California Penal Code section 186.22 provides for a gang sentencing enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."  Cal. Penal Code § 186.22(b).  One of the

requisite elements of the gang enhancement is that the defendant "actively participate[d] in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal activity . . . ." Cal. Penal Code § 186.22(a). A "pattern of criminal activity" means the commission of two or more offenses, including robbery, within a requisite time period, "and . . . committed on separate occasions, or by two or more persons." Cal. Penal Code § 186.22(e).

Substantial evidence supported the jury's finding that Eastside Longo engaged in a "pattern of gang activity" within the meaning of section 186.22(e). Moreno and Castaneda, both admitted their membership in Eastside Longo to Officer Morales (Reporter's Transcript ("RT") at 596-97, 616), who testified to this at the trial. Moreover, both Moreno and Castaneda were previously arrested by the Long Beach Police Department for the predicate crimes, and each was convicted of attempted murder as detailed in the prosecution's Exhibits 72 and 73, which were admitted into evidence. (Id. at 625; CT at 48-49.)

Based on the foregoing, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

### b. **Confrontation Clause.**

Petitioner's argument that the admission of the hearsay testimony violated his Confrontation Clause rights, as detailed in Crawford, also is without merit.

In Crawford, the United States Supreme Court examined the relationship between the Confrontation Clause and the hearsay rule. The Supreme Court held that testimonial statements of witnesses absent from trial are admissible only when (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. Crawford, 541 U.S. at 59, 68. The Confrontation Clause does not, however, bar the admission of testimonial statements when the declarant "appears for cross-examination at trial." Id. at 59 n.9. The Crawford

court further noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matters asserted." Id.

"Under Crawford . . . the Confrontation Clause has no application to [out-of-court nontestimonial] statements and therefore permits their admission even if they lack indicia of reliability." Whorton v. Bockting, 549 U.S. 406, 420, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007). Although Crawford did not expressly define what constitutes "testimonial," it gave three examples of the "core class of 'testimonial' statements": ex parte in-court testimony or its functional equivalent, such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 51-52. Later, the Supreme Court also described as "testimonial" statements made in the course of police interrogation when the circumstances objectively indicated that there was no ongoing emergency and when the primary purpose of the interrogation was to establish past events potentially relevant to later criminal prosecution. Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

Under California law, a jury may rely on expert testimony about gang membership, culture, habits, and activities to reach a finding on a gang allegation. People v. Gonzalez, 38 Cal. 4th 932, 944 (2006); People v. Gardeley, 14 Cal. 4th 605, 617-20 (1996). Gang experts, such as Officer Morales, may rely on conversations with gang members, their own personal investigations of gang-related crimes, and other information to render their opinions. Gardeley, 14 Cal. 4th at 620; People v. Duran, 97 Cal. App. 4th 1448, 1463 (2002).

In People v. Ramirez, 153 Cal. App. 4th 1422 (2007), the California appellate court rejected a similar Crawford claim involving gang expert testimony by the same Officer Morales as in Petitioner's case. In that case, Officer Morales gave expert opinions about the gang membership of those involved in the predicate crimes and about the gang-related nature of these prior crimes. Relying on Crawford, the defendant complained Officer Morales' opinions were based on testimonial hearsay. Id. at 1426. The court first correctly stated that under California law, experts may give opinion testimony that is based on hearsay. Id.; Cal. Evid. Code § 801(b).

The court then pointed out, "Hearsay in support of expert testimony is simply not the sort of testimonial hearsay the use of which Crawford condemned." Ramirez, 153 Cal. App. 4th at 1427. The court noted that experts are subject to cross-examination and that the information on which an expert bases his opinions is not elicited for the truth of its contents but is examined to assess the weight of the expert's opinions. Id.; People v. Cooper, 148 Cal. App. 4th 731, 746-47 (2007); People v. Thomas, 130 Cal. App. 4th 1202, 1208-10 (2005) (court found no Crawford violation in the admission of hearsay evidence in the form of the gang expert's conversations with gang members in which they identified the defendant as a gang member).

The complained-of testimony here is similar to the challenged testimony of Ramirez and Thomas, involving the usual type of information relied upon by gang experts in forming their opinions with respect to California Penal Code section 186.22 allegations. The statements by Moreno and Castaneda were admissible for the jury to assess the weight to give Officer Morales' expert opinion that Eastside Longo was a criminal gang within the meaning of section 186.22. Petitioner had the opportunity to cross-examine Officer Morales regarding the statements made to him by Moreno and Castaneda.

Even if there was a Confrontation Clause violation, there was no prejudice

because under California law, prior conduct and acts committed at the time of the charged offenses can be considered to establish the elements. <u>Forn v. Hornung</u>, 343 F.3d 990, 999 (9th Cir. 2003) (Confrontation Clause violations are subject to <u>Brecht</u> harmless error analysis). In fact, the charged offenses, if committed by two or more persons may establish by themselves the requisite "pattern." <u>People v. Loeun</u>, 17 Cal. 4th 1, 9-11 (1997); <u>Gardeley</u>, 14 Cal. 4th at 624-25. Moreover, the predicate offenses need not be gang-related, and the two or more individuals who committed the predicate crimes need not be gang members at the time the offenses were committed. <u>Gardeley</u>, 14 Cal. 4th at 621-23. In this case, it was clearly established that the charged robberies and murder were perpetrated by two or more persons, and that the charged crimes qualified as predicate offenses under California Penal Code section 186.22(e)(2), (3). Although not necessary to prove the "pattern" element (<u>Gardeley</u>, 14 Cal. 4th at 621-23), it was further established that Petitioner was a member of the Eastside Longos and that the current offenses were perpetrated for the benefit of Eastside Longo. (RT at 350-52, 520-21, 598.)

Based on the foregoing, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

### c.    Ineffective Assistance of Counsel.

Petitioner argues that if this Court denies this claim because counsel failed to preserve his hearsay objection, then counsel rendered ineffective assistance. (Pet. at 6, Ex. B at 16).

For Petitioner to prevail on his ineffective assistance of counsel claim, he must satisfy a two-prong test: (1) he must show that counsel's performance was deficient, and (2) he must show that he was prejudiced by the deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A court evaluating an ineffective assistance of counsel claim

does not need to address both components of the test if a petitioner cannot sufficiently prove one of them.  Id. at 697; see also Thomas v. Borg, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

To prove deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness.  Strickland. 466 U.S. at 687-88.  Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance will the petitioner prove deficient performance.  Id. at 690; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

Establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment.  Strickland, 466 U.S. at 691; see also Seidel v. Merkle, 146 F.3d 750, 757 (9th Cir. 1998).  A petitioner must also show prejudice, such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.  Thus, a petitioner will only prevail if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable."  Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed.2d 180 (1993).

Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential."  Knowles v. Mirzayance, --- U.S. ----, 129 S. Ct. 1411, 1418, 173 L. Ed. 2d 251 (2009).  The relevant question "is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold."  Id. (citations omitted).  "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard." Id.

As discussed above, Petitioner's claims are without merit. As a result, Petitioner has failed to establish that counsel's performance was deficient or that Petitioner suffered any prejudice.

Based on the foregoing, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## VII.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: May 9, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge

22

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

MARK DAMON MYERS,                    )    Case No. CV 10-4838-SJO (OP)
11                                   )
                                     )    ORDER ADOPTING FINDINGS,
12              Petitioner,          )    CONCLUSIONS, AND
           v.                        )    RECOMMENDATIONS OF
13                                   )    UNITED STATES MAGISTRATE
                                     )    JUDGE
14   K. HARRINGTON, Warden,          )
                                     )    PROPOSED
15              Respondent.          )
16   _____)

17        Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all the

18   records and files herein, and the Report and Recommendation of the United States

19   Magistrate Judge, de novo.  The Court concurs with and adopts the findings,

20   conclusions, and recommendations of the Magistrate Judge,

21   / / /

22   / / /

23   / / /

24

25

26

27

28

1    IT IS ORDERED that Judgment be entered: (1) approving and adopting this

2    Report and Recommendation; and (2) directing that Judgment be entered denying the

3    Petition and dismissing this action with prejudice

4

5    DATED: _____

6                                    HONORABLE S. JAMES OTERO
                                     United States District Judge

7

8    Prepared by:

9

10

11

12   HONORABLE OSWALD PARADA
     United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARK DAMON MYERS,                    )    Case No. CV 10-4838-SJO  (OP)
                                     )
                                     )    J U D G M E N T
                Petitioner,          )
          v.                         )
                                     )    PROPOSED
                                     )
K. HARRINGTON, Warden,               )
                                     )
                                     )
                Respondent.          )
_____)

          Pursuant to the Order Adopting Findings, Conclusions, and Recommendations

of the United States Magistrate Judge,

          IT IS ADJUDGED that the Petition is denied and this action is dismissed with

prejudice.


DATED:  _____           _____
                                HONORABLE S. JAMES OTERO
                                Senior United States District Judge

Prepared by:



_____
HONORABLE OSWALD PARADA
United States Magistrate Judge